J. S. MURRELL et al., Respondents, v. HARRY M. SMITH et al., Appellants.

Springfield Court of Appeals, December 5, 1910.

1. NEGLIGENCE: Injury From Falling Platform: Public Exhibitions: Jury Question. Plaintiffs' son, a child of eight years, while attending a street fair in the city of Springfield, finding that he could not get through a crowd on account of its density, made his way under a platform which was open underneath, and which had been erected by the street fair association for the purpose of having juggling, mind reading, and other exhibitions given upon it. As the boy went under the platform a trapeze performance was being given near the platform, and the crowd was surging and pushing to get a better

view of the show. Some climbed upon the platform and others were pressed against it by the crowd, the result being that the platform fell while plaintiffs' son was under it, and he was crushed and killed. *Held*, that the question of whether or not the members of the street fair association were guilty of negligence in failing to anticipate and guard against such an accident was for the jury, and that the facts and circumstances in evidence were sufficient to justify a finding for plaintiffs.

2. ————: ————: ————: Injury to Infant: Invitees: Trespassers. A platform at a street fair had been construct-ed by the street fair association for exhibition purposes, and not for use by the public. The platform was open under-neath, was located on the ground where the fair was being held, was attractive to children to go under it and was easy of access by them. While plaintiffs' son, eight years old, was under-neath the platform a crowd climbing upon and surging against the platform to see a free performance near it, caused it to collapse, and it fell and crushed the boy. *Held*, that deceased in going under the platform did only what a child of his age would naturally have done and although the place beneath the platform was not intended for children, yet those in charge of the fair could well have anticipated that children would go under the platform and should have guarded against such ac-cident.

3. ————: Public Entertainments: Duty to Guests: Antici-pating Danger: Protection Against Negligence of Others. Those who attend a street fair or other public entertainment at the invitation of persons who have the same in charge, are guests of such persons, and while this relation continues they are entitled to protection against danger which could have been reasonably anticipated and which ought to have been foreseen, and by the use of ordinary care could have been prevented. They are entitled to an affirmative and active duty of being protected from all danger arising from their surround-ings, or that might arise from the negligence of other persons, so far at least, as such danger or negligence could reasonably have been anticipated and guarded against.

4. ————: Anticipating Injury. To recover in an action for negligence it is not necessary to show that the defendants should have contemplated or anticipated the precise accident or injury that occurred. It is sufficient to show that they should have foreseen that some injury might result from their failure, and when the injury did result it must appear to be the natural consequence of their negligent acts.

5. ————: ————: Anticipating Movement of Crowd. The movement of large masses of human beings under certain conditions may be anticipated, and foretold with reasonable

certainty. So, at a street fair where there are no seats or amphitheater for the accommodation of the public, the natural tendency of the spectators would be to climb upon any structure or platform which might be within reach, whenever it became necessary to do so in order to see the attractive features of the fair.

6. ———: **Public Entertainments: Duty as to Premises.** The managers of public entertainments who invite the public to attend the performances, hold out, by implication at least, to the people that the place to which they are invited is, and during the entertainment will be, in a reasonably safe condition, and those in charge of the place are bound to exercise reasonable diligence and caution to discharge their duty and keep the place from becoming dangerous.

7. ———: **Infants: Duty Towards Infants: Care of Premises: Turn-table Cases.** Children, wherever they go, must be expected to act on their childish instinct and impulses, and those who are chargeable with the duty of care and caution towards them must calculate upon this and take precautions accordingly. The doctrine of responsibility announced by our court in the turn-table cases are but special applications of and based upon the principles above declared; they are to some extent extreme applications and should not be unnecessarily further extended.

8. ———: **Intervening Causes: Proximate Cause.** The mere fact that there might have been intervening causes between the defendants' negligence and the plaintiff's injury is not sufficient in law to relieve the former from liability. And the defendant is clearly responsible where the intervening causes or conditions were set in motion by his earlier negligence, or naturally induced by it, or if the intervening acts or conditions were of a nature, the happening of which might reasonably have been anticipated, though they may have been acts of the plaintiff himself.

9. **JURY QUESTION: Negligence: Contributory Negligence.** Where the facts are disputed or the credibility of the witnesses is drawn in question, or material fact is left in doubt, or there are inferences to be drawn from the facts proven, the questions of negligence and contributory negligence should be submitted to the jury.

10. ———: ———: **Anticipating Injury.** In an action for injuries caused by another's negligence, whether or not the injurious consequences which have resulted from such negligence are such as ought reasonably to have been foreseen, is ordinarily for the jury.

152 App.—7

Appeal from Dade Circuit Court.—*Hon. B. G. Thurman*, Judge.

AFFIRMED.

*Patterson & Patterson* and *Mann, Johnson & Todd* for appellants.

Defendants' peremptory instruction should have been given and the court erred in refusing it when offered at the close of plaintiffs' case and again when it was offered at the close of all the evidence. Arnold v. St. Louis, 152 Mo. 173; Marcheck v. Klute, 133 Mo. App. 280; Glaser v. Rothschild, 221 Mo. 180; Parker v. Publishing Co., 69 Me. 173; Pierce v. Whitcomb, 48 Vt. 127; Ryerson v. Bathgate, 67 N. J. L. 337; Shaw v. Goldman, 116 Mo. App. 341; 21 Amer. and Eng. Ency. of Law (2 Ed.), 427; Davis v. Ringolsky, 127 S. W. 625; Barry v. Cemetery Assn., 106 Mo. App. 358; Archer v. Railroad, 110 Mo. App. 349; Kapps v. Shoe Co., 116 Mo. App. 171; Butz v. Cavanaugh, 137 Mo. 503; Saxton v. Railroad, 98 Mo. App. 494.

*Neale & Newman, W. C. Hawkins, J. W. Miller* and *Hamlin & Seawell* for respondents.

(1) The principles of law declared in Hollis v. Merchants' Association, 205 Mo. 508, when applied to the facts as found by the jury in this case, will necessarily result in the affirmance of the judgment of the trial court. Thompson v. Railroad, 40 L. R. A. 345. (2) Having invited the public to its fair, it was the duty of the society to use reasonable care in making the allotments of space for exhibits, shows, and other features, and in their subsequent inspection and supervision, to see that the safety of its patrons was not endangered. Texas State Fair v. Brittain, 118 Fed. 713, 30 Tex. Civ. App. 132, 69 S. W. 432; Nichols v. Railroad, 5 Am. St. Rep. 247; Hawver v. Whalen, 14

L. R. A. 828; Thornton v. Agri. Soc., 97 Me. 108, 94 Am. St. Rep. 488; Kelly v. Parker Co., 107 Mo. App. 490; Ransom v. Depot Co., 142 Mo. App. 369; Roper v. Agri. Soc., 120 N. Y. 644; Scott v. Athletic Assn., 15 Am. and Eng. Ann. Cases, 515; Dwyer v. Railroad, 12 Mo. App. 597; Nagel v. Railroad, 75 Mo. 653.

STATEMENT.—This was an action commenced in the circuit court of Greene county on the 24th day of December, 1909, by J. S. Murrell and Nora Murrell, as the father and mother of Oliver Murrell, deceased against Harry M. Smith and others, and was an action for damages for the death of plaintiffs' infant son.

The petition, in substance, charges that the defendants were members of the Merchants' Campbell Street Fair Association which was organized for the purpose of holding street fairs in order to attract crowds, draw trade and build up their street in the city of Springfield. That it was advertised that a street fair would be held on the 6th day of October, 1909, and that, for the purpose of securing a crowd, defendants advertised free attractions to be given to the public on a platform on the grounds near Campbell street, in said city of Springfield; that among other free attractions would be acrobatic, spiritualistic and hypnotic performances, and trapeze and jugglery performances. The plaintiffs' son, Oliver, a child of eight years of age, with his father and mother, attended the fair on the evening of October 6th. That a platform, to be used by the performers, fourteen feet wide and eighteen feet long and some four feet above the ground, was erected on the grounds. That after the infant son of the plaintiffs had seen the attractions, when starting home, went under this platform, and it fell while he was underneath it and crushed him. The prayer is for judgment for damages in the sum of $7500.

The answer was a general denial.

The venue of the action was changed on application of the plaintiffs and the case was sent to the circuit court of Dade county. Upon trial before a jury, plaintiffs obtained a judgment in the sum of three thousand dollars, from which the defendants duly perfected their appeal to this court.

The respondents are the parents of Oliver Murrell, deceased, a youth of eight years of age at the time of his death. The appellants are members of the Campbell Street Fair Association, an organization of merchants, formed for the purpose of holding street fairs, and giving free attractions near their places of business in the city of Springfield, Missouri, in order to attract crowds, draw trade, build up their street as a business center and increase the value of their property and business. The membership of the association consisted of grocers, bankers and others, who organized and appointed committees and officers.

The fair was held on the 6th of October, 1909, on a lot adjoining Campbell street. This lot had been used theretofore as a walkway, driveway and market place, an open space which was free to the public, and which had been used for fair purposes and the like for several years. Great efforts were made prior to as well as on the day on which the fair was held to attract as large a crowd as possible; and, for that purpose, it was held out to the public that there would be many free attractions, such as acrobatic, spiritualistic and hypnotic performances, trapeze and jugglery performances, etc. For the purpose of raising the performers above the crowd and enabling the spectators to get a better view of the performances, the platform in question was erected, and was some fourteen feet wide and eighteen feet long, and about four or five feet above the ground. The defendants constructed this platform in close proximity to the sidewalk on Campbell street. Within ten or fifteen feet of this platform, on the west or southwest side of it, a trapeze

was suspended for aerial performances. A wire was stretched from the platform in question to another platform, and there was a frame rack about twenty feet high in which "Fresco," the trapeze performer and ring walker, walked with his head down.

The evidence was conflicting as to the substantial nature of the platform, the evidence for the plaintiffs tending to show that its construction was of a weak, unsafe and unsubstantial character; that the materials used in its construction were wholly insufficient, that the supports were too small, and insecurely fixed, and that it was unsafe and likely to fall under the weight of any considerable number of people, and was likely to be overthrown by persons standing on the ground and pushing or crowding against it. The appellants, on the contrary, showed by numerous witnesses that the materials, workmanship and construction were in every respect first-class. Respondents' evidence also tended to show that underneath, the platform was open, and that there was nothing to prevent children from readily going underneath the same as there were no ropes or barriers; that frequently, during the day, from time to time, before the injury to plaintiff's son, numbers of people other than performers occupied the platform, consisting of men, women and children, but not in such considerable numbers as to create any alarm as to the sufficiency of the platform; that during the day, children were seen underneath the platform walking from side to side; ice was stored under the platform, and sawdust, where the children played. That during the day great crowds of people spread over the grounds where the street fair was being held and onto the adjoining streets and open places; that they crowded around and about the platform and were attracted to the platform by the performances thereon and thereabouts. The evidence showed that the platform was built for the performers and not for the use of the public, and tended to show that there was

no invitation to the public to go upon it; that there was no place for their accommodation when they did get on it; that there were no chairs on it, except for performers, no railing, no steps and no ladder for going upon it.

Among others, plaintiffs and their boy, Oliver, attended the street fair to see the attractions. After Oliver Murrell and a playmate by the name of Sammy Hitchcock had been on the grounds some time, they left Oliver's mother to go west of the platform in order to get a better view of the performances on the trapeze, and, some fifteen minutes after leaving Oliver's mother, the two boys started home, but when they had made their way to Campbell street, they saw they could not get through to go on because of the density of the crowd, and, the way under the platform being open, Oliver went under it, as its construction would not interfere with his entrance, and when about under the center of it, on account of the weight of a large number of people climbing onto the platform and surging against it, it gave way and fell upon and killed the boy.

Within fifteen feet of the platform, a trapeze was constructed and a wire stretched from one end of the platform in question to another platform, and between this and a tent was a frame rack about twenty feet high in which "Fresco," the trapeze performer and ring walker, walked with his head down. Among other attractions advertised to take place on this platform were "wonderful mind-reading acts by Forbes," and "wonderful stunts by Larkin, the juggler."

Just before the fatal accident, a brass band under charge of Emmett Newton, one of the defendant's managers, preceded an automobile parade through various streets of the city, and finally conducted it, with a great throng of people following, to the platform constructed for "Larkin," "Fresco," and "Forbes." About this time, the trapeze man started his perform-

ance, which was to be followed by a juggler and contortionist who were to perform on the platform, and it had been prepared for them by erecting thereon a cabinet of cloth with a wooden frame; five chairs were on this platform for performers to sit on. As the trapeze man commenced his performance and began "walking the rings," there was great excitement in the crowd and intense interest to see the performance, and the throng of people around and behind the platform, in order to get into a more eligible position to see the performance, commenced to scramble upon the platform; others, behind them, pushed forward to take their places, and still others behind them surged forward against the platform, causing it suddenly to collapse.

At no time during the fair was there any warning given by the defendants' managers of the danger of people getting on the platform, or underneath it, and no attempt was made to get the crowd away from the platform or keep the spectators away by the use of guards, or ropes. There was some evidence, however, that Emmett Newton with one or more of his assistants, immediately before the accident, as well as at other times, notified people who climbed on the platform to get off, but that as soon as one set would get off another would get on. This notice was given, as he states, not as a warning to them of any danger of the platform giving way, but because the stage was for the performers. There was also evidence that some fifteen or twenty minutes before the accident several children were seen under the platform or could readily have been seen by those in charge of the performance.

NIXON, P. J.—The principal contention of the appellants on this appeal is that the trial court, by refusing their peremptory instruction, committed material error, because, they maintain, none of the ma-

terial allegations in plaintiffs' petition as to the negligence of the appellants were sustained by the evidence; that the platform, the fall of which caused the death of plaintiffs' son, was not built for public use, and that its very construction and appearance was such as to give all persons notice that it was only built for exhibition purposes; that the deceased, voluntarily, for his own convenience, put it to a use for which he knew it was not intended, and a use which was not contemplated and would not have been anticipated by persons of ordinary prudence; and that the defendants were not required to protect the platform against such possible use, and assumed no duty to keep it safe. The brief, and argument, of counsel for appellants are devoted almost exclusively to maintaining this contention, that under the facts of the case the plaintiffs were not entitled to recover and that the appellants were not liable for the boy's death.

The controverted questions of fact have been submitted to a jury and settled against the claims of the appellants. The verdict of the jury was for the plaintiffs, and, if there is any substantial evidence in the record to support that finding, their verdict must be sustained. Our Supreme Court has emblazoned on the walls of the appellate courts their positive duty as to facts in negligence cases, that where the facts are disputed, or the credibility of witnesses is drawn in question, or a material fact is left in doubt, or there are inferences to be drawn from the facts proven, the questions of negligence and contributory negligence should be submitted to the jury. [Eckhard v. St. Louis T. Co., 190 Mo. 593, 89 S. W. 602; McKenzie v. United Rys. Co., 216 Mo. l. c. 22, 115 S. W. 13.] In the case of Westervelt v. St. Louis T. Co., 222 Mo. l. c. 334, 121 S. W. 114, the Supreme Court used this language: "But we will not meddle with that conflict of testimony. The genius of our law has wisely and quite relieved an appellate court from that burden,

at least.  We neither hunger nor thirst after, nor assume, power to disturb the finding of twelve men in the box sanctioned by one on the bench on a question of fact on which the testimony ran pro and con.  Theirs ·(not ours) the duty to sift and winnow out the true from the false, to believe or disbelieve.''  The duty of a trial court, in refusing to give a peremptory instruction in the nature of a demurrer to the evidence, must be determined from the proper application and in the light of the above decisions which are the law of this case and controlling.

The boy, Oliver Murrell, met his death, as we have stated, under a platform erected by and under the charge of the defendants' managers in the very midst of the fair grounds.  This public place where defendants fair was being held for the purpose of attracting and entertaining the people in order to promote their interests, was under the charge of the defendants' agents, and was open and free to the public attending the carnival.  This platform, as the evidence abundantly showed, was some four or five feet above the ground and was erected at a place selected by the defendants and in charge of them and on the grounds which had been advertised as the place for the principal acrobatic, spiritualistic and hypnotic attractions.  There was no amphitheatre nor seats of any kind provided for the accommodation of the public which had been invited to the fair, and the large crowd of men, women and children thronged at will from side to side of the grounds and around the platform without let or hindrance.  The space underneath was open to the free access of the children and there was nothing to show that they were not invited to go beneath it.  During the morning and afternoon of the day on which the fair was held and for hours before the accident, from time to time, children, taking advantage of the open place, were seen to congregate underneath the platform, and made it a resort to eat candy, and pass

around underneath from side to side. Ice was stored under it, and sawdust, where the children would play.

The plaintiffs had accepted the invitation of the defendants and visited the fair, reaching there somewhere between six and seven o'clock in the evening. The mother was accompanied by her son, Oliver, her little girl, and a boy by the name of Sammy Hitchcock. Oliver had been with his mother in visiting the attractions of the fair, but left her to go to the west side of the platform in order to get better view of the trapeze performance, on his way home. Some fifteen minutes after he and Sammy Hitchcock left the mother, when the boys reached Campbell street, seeing they could not get through on account of the size of the crowd, went to the platform, and the way being open, went under it. While Oliver was beneath it, the trapeze performance commenced, a crowd rushed upon and surged against the platform, and it collapsed and fell upon him causing his death.

Under the conditions surrounding the entertainment and the manner in which the platform was constructed, or from its surroundings, there was no reason why children might not think they had a right to go under the platform and play or pass through from side to side. Such an open space right in the heart of the fair grounds was naturally alluring and attractive to the childish instincts and disposition of a boy of the age of the deceased. Under these circumstances, should it be said that those in charge of the fair grounds owed no duty to those children, situated like the deceased was, and that they were not required as a matter of law to secure the platform above the heads of the children to make it free from the danger of falling and crushing them beneath its weight? The appellants contend that the open place beneath the platform was not intended for children, and that although they were invited to the fair grounds on which the entertainments were being given and might

go over the grounds at will and even look under the platform and see how inviting it was, but the moment a child six or eight years of age went beneath it for any purpose, he was straying obviously beyond the bounds of the defendants' invitation to him and was consequently acting at his peril, and that the defendants were thereby released of all liability by reason of any accident that might befall him from the collapse of the platform. This contention is sought to be supported upon the authority of Judge LAMM in the case of Glaser v. Rotchschild, 221 Mo. 180, 120 S. W. 1, in which it is said: "In getting at the essence of and giving reasonable scope to the rules of law applicable to the liability of the owner for injuries received by an invitee, it has been well held that his license does not give him the right to roam at will, without further invitation, to out-of-the-way places on the premises, wholly disconnected from and in no way pertaining to the business in hand; for instance, to the roof from a curiosity to see a passing street pageant, to the garret to find what his prying eye may search out there, to the basement for a like purpose." We cannot recognize the force of this statement as applied to the facts of this case. The appellants' argument overlooks the clear and broad distinction, easily recognizable, by which the two cases are broadly distinguished from each other; and it could not be said with any semblance of reason that the boy, Oliver, at the time he went under this platform was in an "out-of-the-way place" wholly disconnected from the street fair; nor can it reasonably be said that is to be compared to the curiosity that would lead one to go into an out-of-the-way place such as a garret to gratify a mere curiosity or to seek the basement of a house for a like purpose. It is apparent upon the slightest examination that the plaintiffs' child, considering his age and surroundings—a child only eight years of age with those childish instincts characteristic of such

a boy—in going under the platform, under the facts disclosed in this record, was only going where a child of his age would naturally have gone and in a place where those in charge of the fair grounds who had erected this platform could well have anticipated children would go and in which, during the day, children were going. The argument overlooks the fact that the entire space occupied by the fair grounds was open to the public and filled with various attractions where everybody attending the fair was invited and expected to go. Suppose an old well had been left open on the grounds, or a cinder pile left burning, or planks on the ground with sharp nails in them, or dangerous debris of any kind left unguarded, could it be argued that adults and children were not invited to these particular spots or places, and hence no liability on the part of those in charge of the grounds? If a merry-go-round, or any other construction on the grounds had fallen, could it be said that the injured parties should not have been at that particular place, and that it would not have been a question under the facts for the jury to determine whether defendants by their agents should not have anticipated the result and taken reasonable precautions to prevent it?

Negligence is a relative term and depends on the circumstances and the obligation which rests on the party injured to care for his personal safety and must adjust itself to surroundings. [29 Cyc. 429.] Children, wherever they go, must be expected to act on their childish instincts and impulses, and those who are chargeable with a duty of care and caution toward them must calculate upon this and take precautions accordingly. The doctrines of responsibility announced by our courts in the turn-table cases are but special applications of and based upon the principles above declared. They are, to some extent, extreme applications, and not unnecessarily to be further extended. The appellants contend that the doctrines of

those cases have no application to the present case. The courts in those cases say that railroad turn-tables are dangerous machines and peculiarly attractive to the instincts of children, and, if left unlocked and exposed in a public place where children resort, the railroad company owning the turn-table is liable in damages for injuries to a child playing thereon. But it must be recollected in this connection that in those cases the children were trespassers on private property and that the owners had never given an invitation or their consent to the use of the turn-table by the children and had no knowledge of their presence; that the turn-tables were situated on private property of the railroad company and instrumentalities necessary to the carrying on of their business as common carriers. The companies were, however, held liable for injuries to children in such cases by reason of an implied invitation on account of the attractiveness of the place which would naturally induce children to go upon the premises. In this case, the defendants' agents held out an express invitation to children to go upon the grounds where the platform was erected and had prepared exhibitions and free amusements for the purpose of inducing children to visit the fair, and the platform was erected for the express purpose of allowing children and others to go around and about it in order to witness the defendants' exhibition. When the child, Oliver, stood before the opening under the platform, he was not an intruder, nor was he at that place by mere acquiescence of the defendants' agents. He was at a place where he had a right to be by their own express invitation, and when they had prepared such a place for children and had invited their attendance, they knew or by the exercise of ordinary care should have known, when they erected the platform some four or five feet above the ground without any barriers around the open space beneath, that it would be resorted to by children. It was spec-

ially left open underneath when it might easily have been closed if those in charge had desired to keep the children out of it.   There was nothing to warn this child not to enter.   The management well knew that children would be likely to enter and that during the day children had entered beneath the platform.   As Oliver stood there, about to go under the platform, no voice came to him that a child of his age could understand, saying, "Thus far shalt thou go, but no farther."   No friendly monitor stood by his side to warn him that if he entered this opening a horrible death was to await him.   He entered, the crowd surged over and around the platform and the death trap fell upon its victim.   The jury have found under the evidence presented to them that when the defendants prepared this platform and invited the attendance of children to witness the entertainment, they owed a duty to exercise reasonable care to protect them from injuries that might reasonably be anticipated, and under the evidence an appellate court cannot disturb their finding.

Appellants further contend that the platform was only constructed to accommodate the performers and that it was properly constructed to answer that purpose.   There can be no reasonable doubt but what those in charge of the fair intended that this platform should be used only by performers, and that it was constructed sufficiently strong for that purpose.   There were physical facts as well as testimony that speak very plainly that the platform was not intended to be occupied permanently by the crowd in attendance at the fair as spectators, and it was apparent that it was intended only for performers; among other pertinent facts, no chairs or seats were placed upon the platform, and no ladder or other means was prepared by which people could enter upon the platform, and the further fact that it was actually occupied by per-

formers tended to show that it was not designed to be permanently occupied by spectators.

Appellants contend that while they had invited the public to attend the fair, such invitation did not justify them in intruding themselves upon places on the premises not intended for their use, and that they were as much trespassers in getting upon the platform under the circumstances as if they had mounted a buggy or carriage to which horses were hitched and being exhibited for premiums, or had perched themselves upon wires intended for performers; and that the invitee must restrict himself to the premises to which he is invited and not stray upon parts of the premises obviously not included in his invitation.

This argument would have very convincing force if the persons who climbed upon the platform and thereby became trespassers had themselves been injured by reason of their wrongful act; but as to the child underneath the platform and the duty of the defendants to protect him, another legal rule is brought into operation. It is quite immaterial in this case whether the people occupying the premises were licensees, invitees or trespassers for the reason that this was not an action by those persons for any injury they received by the fall of the platform. The gravaman of the plaintiffs' case is the negligent failure of appellants to use due care to keep the place in a safe condition; the negligence as charged consisted in not using proper care, and in permitting the platform to be so used and thereby rendered unsafe to other persons not thereon without using such means as a reasonably prudent man would have used under similar circumstances and conditions to properly guard the platform and properly to warn the people around it or under it of the danger that might befall them. The law as to the liability of those who take charge of public resorts and places of amusement has received numerous applications and speaks in no un-

certain tone as to their social and legal duties. The defendants, having invited the public to their street fair, were chargeable with the duty of using reasonable care to see that the premises were kept in a safe condition for the use of their guests. [Am. and Eng. Ency. Law, vol. 21, p. 472.] The managers of public entertainments who invite the public to attend the performance, by implication at least, hold out to the people that the place to which they are invited is and during the entertainment will be in a reasonable condition of safety, and those in charge of the place are bound to exercise reasonable diligence and caution to discharge this duty and keep the place from becoming dangerous. The movement of large masses of human beings, like the movement of large bodies of water, when acting under fixed conditions can be often anticipated and foretold with reasonable certainty. It is well known to everybody that in such a throng of people as attended this fair, with no amphitheatre or seats for the accommodation of the public, the natural tendency of the spectators would be to climb upon any structure or platform which might be within reach whenever it became necessary to do so in order to see the attractive features of the show. This tendency was well known to Emmett Newton, one of the defendants' managers, and he stated in his testimony for the defendants that he knew how crowds acted at a fair. He testified, in part, as follows: "Q. As a rule, crowds at a fair grounds get together, kind a go together and surge against booths, platforms, etc.? A. Yes, I have seen them surge and at other times not. Q. You had had experience with crowds getting on platforms as you said awhile ago? A. Yes, sir. Q. You had been on platforms when they fell down? A. Yes, sir. Q. You had had this experience at the time you were looking at this platform in the morning to see if it was sufficient? A. Yes, I had been around a number of platforms." So it is seen from this testimony that

those in charge of the fair, knowing the tendencies and propensities of crowds of spectators, might well have anticipated the probable results of erecting the platform in the manner and at the place and with its surroundings. The defendants could not give an entertainment or a carnival in the manner this fair was given without assuming a legal responsibility and duty of care and protection by at least taking some reasonable precautions and measures to protect the public who came at their invitation against dangers that might be anticipated by a reasonable person as likely to result from the natural and probable consequences of their acts. It is, of course, true that the injury must be the legitimate consequence of the negligence. The consideration of the question of proximate cause and the relation of cause and effect was for the jury. They were required to determine whether the injury in this case was to have been anticipated and foreseen and was the natural result of the acts and omissions of the defendants in failing to erect a sufficient platform and using reasonable precautions to protect the crowd of people, who gathered upon the grounds, from the platform breaking down and injuring them. The place where the temporary platform was erected, the size of the crowd that gathered around it and the manner in which the trapeze was located, were all for the consideration of the jury, and it was for them to ascertain whether it was reasonably to be expected that under these circumstances the injury would result from the crowd climbing upon the platform or surging against it and as to the care required of the defendants to prevent any injury by reason thereof. It was not necessary, however, that the defendants should have contemplated or been able to anticipate the injurious consequences to the plaintiffs in the precise form in which they were injured by the killing of their son, but it was sufficient that those in charge of the fair might have foreseen

that some injury might result from the failure to con-
struct a proper platform, and, when the injury did re-
sult, it must be seen that it was the natural conse-
quence of their negligent act. [Van Cleef v. Chicago,
23 L. R. A. (N. S.) l. c. 642.]

The immediate antecedents of the injury show
clearly enough how it was brought about. The band,
at the head of the automobile parade, with a large
crowd of people following, was led by one of the de-
fendants' managers to the south side of the platform in
question to witness the trapeze performance, and an
immense crowd of people gathered around this plat-
form. When the performance of the trapeze com-
menced and was at the interesting stage, the trapeze
performer walking with his head down, the curiosity
of the spectators was raised to its greatest height to
see the man walk on his head. The situation of the
platform and its height was such that those spectators
nearest Campbell street, northeast of the platform, had
their view of the performance on the trapeze more or
less shut off by the platform, and, as they were about
to lose the most interesting part of the whole show,
naturally climbed to any eligible position where they
could better witness the man who was walking on his
head. This platform was four or five feet above the
ground and afforded a fine view to those on it of the
trapeze performance, and a large number of people
availed themselves of it, as might well have been an-
ticipated. At the same moment that those in front
climbed onto the platform, those behind pressed for-
ward to fill their places and to get for themselves a
better view of the performer, and others surged for-
ward around and against the platform, and the two
forces caused it to collapse and bring about the death
of plaintiffs' son. Under this evidence, it was for the
jury who were supposed to be specially qualified to
pass upon questions of fact, to have determined whether

these consequences by the exercise of reasonable care could have anticipated and foreseen and whether reasonable precautions were adopted by defendants to prevent the result.

Every person who attended the fair upon defendants' invitation to witness the exhibition was in law the guest of the defendants and the managers of the association who were in charge of the grounds and the structures erected thereon, and as such, they were responsible for the manner in which the fair was conducted. While this relation continued, the law imposed upon them the duty of protection against dangers which could reasonably have been anticipated, and which they ought to have foreseen and by the use of ordinary care could have prevented if due care had been taken with reference to possible accidents of the kind. This duty of care and protection not only required that defendants themselves should refrain from injuring the spectators in attendance, but further that they should exercise affirmatively the active duty of protecting such persons from all dangers arising from their surroundings and preventing injuries that might arise from the negligence of other persons, so far, at least, as such danger or negligence could reasonably have been anticipated and reasonably guarded against. [Scofield v. Wood, 49 N. E. 636; Larkin v. Beach Co., 3. L. R. A. (N. S.) 982; Hart v. Washington Park Club, 41 N. E. 620; Lane v. Minn. State Agri. Society, 29 L. R. A. 708; Williams v. Mineral City Park, 1 L. R. A. (N. S.) 427; Thornton v. Maine State Agri. Society, 53 Atl. 979; Richmond & M. Ry. Co. v. Moore's Admr., 27 S. E. 70; Indianapolis St. Ry. Co. v. Dawson, 68 N. E. 909; Mastad v. Swedish Brethren, 85 N. W. 913; Fox v. Buffalo Park, 47 N. Y. Suppl. 788; Hollis v. K. C., Missouri, Retail Merchants' Assn., 205 Mo. 508, 103 S. W. 32.]

In cases of this kind, the measure of duty being reasonable care, the condition of the appliance or structure which caused the injury, as well as the premises at the very time and place of the injury, is a material inquiry, and evidence of the conditions before and after the accident is competent in order to show the immediate cause of the injury and the responsibility of those in charge of the structure. In such cases, actual notice of defective conditions, or knowledge in fact that injuries will probably result from a particular act or omission, is not necessary to charge the defendants with negligence; but evidence that the defendants had knowledge of the defective condition or had been informed that injuries would clearly flow from the act of negligence complained of would be proper matters for the jury's information. Negligence, like any other fact, may of course be established by circumstantial as well as direct proof, and the conclusions are to be arrived at from the examination of the entire surroundings and scene of the accident. In an action for injuries caused by another's negligence, whether or not the injurious consequences which have resulted from such negligence are such as ought reasonably to have been foreseen is for the jury. [29 Cyc. 639; 21 Am. and Eng. Ency. Law, 498.] The question what precautions should reasonably be taken or were reasonably necessary to protect from an alleged danger from which a plaintiff' injuries resulted, or whether the failure to adopt a particular precaution constituted negligence under all the facts and circumstances shown, is, in general, for the jury. [21 Am. and Eng. Ency. Law, 501.]

It is claimed by appellants that the climbing of the spectators upon the platform and the surging of the crowd against and around the platform was an intervening cause which produced the boy's death, and for which, therefore, the appellants should not be held responsible. "It is well settled that the mere fact that

there have been intervening causes between the defendant's negligence and the plaintiff's injuries is not sufficient in law to relieve the former from liability; that is to say, the plaintiff's injuries may yet be natural and proximate in law, although between the defendant's negligence and the injuries other causes, conditions, or agencies have operated, and when this is the case the defendant is liable. So the defendant is clearly responsible where the intervening causes, acts or conditions were set in motion by his earlier negligence, or naturally induced by such wrongful act or omission, or even, it is generally held, if the intervening acts or conditions were of a nature the happening of which was reasonably to have been anticipated, though they may have been acts of the plaintiff himself." [21 Am. and Eng. Ency. Law, 490.]

The defendants in this case selected and controlled their own agents, put them in control of their own grounds, and had exclusive control over the management of the entertainment, and under the law fixing their social duty, they were required to so conduct themselves as not to injure others by their negligence. The case of Thompson v. Lowell, L. & H. S. R. Co., 40 L. R. A. 345, grew out of a free exhibition of markmanship where a spectator while in attendance received an injury for which he brought suit. The court, in discussing the case, said: "The defendant contends there was no evidence upon which the jury was justified in finding that the plaintiff was injured by any negligent act or omission on its part; or, in other words, that there was no evidence of any failure on its part to perform its duty in the premises. The question is suggested how far the defendant is bound to go in supervising the instruments and appliances used, and the other details of the exhibition. Should it be held to inspect the rifle and the cartridges, to see if they were safe? Without undertaking to go into unnecessary detail, it is apparent that there was evidence

tending to show that the accident happened from a cause which might have been prevented and that it ought to have been foreseen and guarded against by somebody." And so, in this case, the issue was presented to the jury whether a reasonably prudent man under all the circumstances would have had reasonable grounds to anticipate the platform was likely to collapse and injure those around it, and whether the defendants used reasonable care to prevent the catastrophe. In arriving at conclusions, the jury acted within their constitutional rights and an appellate court is powerless to interfere and set aside and annul their verdict.

Appellants have also raised objections to the sufficiency of the pleadings and the instructions given by the trial court, but on full examination we find no material errors which under our practice would authorize a reversal. It is therefore ordered that the judgment be affirmed. All concur.