[No. 16112. Department Two. February 17, 1921.]

ANNA L. HUTCHINS, *as Guardian etc., Respondent,* v. SCHOOL DISTRICT No. 81 OF SPOKANE COUNTY, *Appellant.*[1]

NEGLIGENCE (10, 38)—ACTS CONSTITUTING—DANGEROUS PREMISES —PLACES ATTRACTIVE TO CHILDREN—EVIDENCE—SUFFICIENCY. The negligence of a school district in leaving an open pit on the school grounds unguarded is a question for the jury, where it was left open and unguarded for seven months, surrounded by loose boards calculated to tempt children in play.

SAME (22, 39)—CONTRIBUTORY NEGLIGENCE—CHILDREN—EVIDENCE— SUFFICIENCY. Contributory negligence, as a matter of law, is not shown by evidence that a boy ten years old was attempting to hop across a plank over an open pit on the school grounds, when he lost his balance, it appearing that he was answering a challenge and did as other boys had been doing.

PLEADING (104) — AMENDMENTS—TO CONFORM TO PROOF. It is not an abuse of discretion to permit a trial amendment to a complaint alleging negligence in maintaining an open pit on school grounds, to

[1]Reported in 195 Pac. 1020.

conform to proof that the place was attractive to children, which had been received without objection.

TRIAL (101)—INSTRUCTIONS—REQUESTS—INSTRUCTIONS ALREADY GIVEN. It is not error to refuse a requested instruction to the effect that a boy must use such care as a person of his capacity, age and experience could ordinarily use, where it was sufficiently covered by instructions defining contributory negligence, dependent upon his experience and age, and the care exercised by an ordinarily reasonable and prudent person under the circumstances.

DAMAGES (84)—EXCESSIVE DAMAGES—PERSONAL INJURIES—INJURY TO LEG OR FOOT. A verdict for $1,750 for injuries sustained by a boy ten years old, is not excessive where he sustained a broken tibia at the ankle joint and was permanently injured.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered March 27, 1920, upon the verdict of a jury, rendered in favor of plaintiff, in an action in tort. Affirmed.

*Davis & Heil,* for appellant.

*E. R. Livesey* and *John M. Gleeson,* for respondent.

MITCHELL, J.—This action was brought by Anna L. Hutchins as guardian *ad litem* for Dan W. Hutchins, a minor, as plaintiff, against School District No. 81 of Spokane county, Washington, as defendant, to recover damages for personal injuries to the minor alleged to have been caused by the negligence of the defendant. The defendant denied negligence on its part and further alleged contributory negligence on the part of the minor, which latter was denied by the plaintiff. A trial of the case to a jury resulted in a verdict and judgment for the plaintiff in the sum of $1,750, from which the school district has appealed.

The school district commenced work on an addition and in the making of repairs to one of its buildings known as the Holmes school, in the summer of 1918. In August of that year, through its superintendent of buildings and grounds, it dug a pit on the school

grounds for the purpose of changing the sewer connections of the building. The pit was dug nine feet deep and several feet across for the establishment of a manhole which was installed by the contractors some time after the happening of the accident complained of. The dirt from the excavation was thrown out on the sides. Debris, timber and lumber taken out of the building in making the repairs, estimated at about thirty wagon loads, were scattered from time to time near and around the pit. There was no notice or warning upon the premises, nor was there any guard rail, fence, or covering around or over the pit. This condition continued seven months, and until after the boy was hurt on March 25, 1919. It was situated on the play grounds that were always open and free to the school children. The school was for the minor grades and had been attended by this boy from the age of six until he was hurt, at which time he was nine years and seven months of age.

School commenced in the building as usual in September, 1918, and continued until some months after the accident. The school had an attendance of about five hundred boys and girls. On the day of the accident, March 25, 1919, the boy arrived at the building shortly before school opened and began playing with other boys about the pit. Some time previous to that day, a plank had been placed across the hole, the ends of the board resting on solid ground. There is no conflict in the evidence as to how the accident occurred. The boy was playing with others near the hole and one of the boys dared them to hop across on the board. His account of it is as follows:

"Q. That is the first time that you went on this plank you lost your balance and fell? A. Well, I had been across it once, I think. Q. That morning? A. No, the day before. Q. The day before. And up until

the day before had you played around this hole? A. Not very much. . . . Q. But you never went near this hole. Did any of the boys? A. Yes, lots of them did. Q. Why didn't you? A. Why, I was playing ball there most of the time. . . . Q. Do you recall who it was dared you to go on the plank? A. I don't remember. Q. Were any of the other boys crossing this plank? A. Yes, one boy got across before me, so I thought I could get across. Q. When this other boy went across the plank, did you hear it crack? A. No. Q. You didn't hear that. Why did you go across the plank? What was your purpose in going across there? A. Well, they dared me to and the other boy got across, so I thought I could. Q. You were not going across in order to get over to the other side of the ground, or anything like that? A. Yes. I didn't have any idea I was going to fall in. Q. Well, you were just going across the hole just playing, weren't you? A. Yes. Q. When you went on the plank were you walking or running or hopping or jumping or what? A. I was hopping. Q. You would get out to the middle of the plank and jump up and down. A. No, the board—I did not jump up and down. The board was springy. Q. Do you remember whether the board bent down quite a little in the middle at the time you were on the plank? A. Well, yes. Not very much, though. Q. And at this time you were hopping up and down? A. Yes. Q. Do you remember on which foot you were hopping? A. On my right foot. Q. You were hopping on the foot that was injured. A. Yes. Q. Did you see any of the other boys go across the plank? A. Yes. Q. And how did they go across it? A. They hopped across. Q. Hopped up and down. Would they go to the middle of the plank and hop up and down? A. Well, they hopped clear across. Q. Did any of them stop and jump into the hole? A. No. Q. And when they were jumping, where were you? A. Waiting my turn. Q. Your turn came? A. Yes. Q. You were standing up on the bank around the hole and watched them jumping, going across? A. Yes. Q. Could you tell the jury just in what way you fell off the plank or what caused you to fall? A. Well, I

overbalanced. Q. Did the plank tip? A. No. Q. Did the plank break? A. No. Q. Crack? A. No. Q. But you overbalanced? A. Yes. Q. You mean that when you were hopping up and down you hopped a little too far to one side or the other, and sort of missed the plank? A. Well, they yelled at me, and I hopped a little too far to one side. Q. And sort of lost the plank and fell down. How did you get out of this place? A. They had to drag me out."

The injury was to the right foot. There was a fracture of the tibia beginning about an inch above the end of the bone extending down through the cartilage at the end of the bone into the ankle joint. It caused intense pain for several days and nights. The boy was confined to the house for about four weeks, used crutches for about eight weeks, and then used a cane for a while. The testimony is ample to show that the boy received approved treatment and care, notwithstanding which it was apparent, at the time of the trial of the case about a year after the injury, that the foot was permanently injured.

It is argued by the appellant that its motion for a nonsuit was improperly denied, and also that its motion for a judgment n. o. v. should have been granted. The argument is based upon the assertions that there was no proof of negligence on the part of the school district and that the boy was guilty of contributory negligence. The accident happened on the play grounds of a public school teeming with hundreds of children of tender years. For seven months the pit was left open, without guard or barrier, surrounded by loose boards and timbers calculated to encourage and tempt the children in their pranks and ventures about the place, while and at the same time those same articles afforded to the school district the means, in a few moments of time, to have made the place almost or quite impossible of danger. In our view, upon the

question of whether the attractiveness of the dangerous place was such as to entice children, and at the same time such as to constantly suggest to the school district and its officers the reasonable probability of just such or a similar accident, there can be no room for an opinion other than that it was one for the jury. *Jorgenson v. Crane,* 86 Wash. 273, 150 Pac. 419, L. R. A. 1915 F 983.

As to the other point, the boy had the implied consent of the school district and the teachers, at least there had been no objection made in any manner, to engage in play over and about the pit. He had observed other small boys perform the same feat without mishap. His manner of attempting to execute the trick to which the boys had been challenged by other playmates was similar to that of those who preceded him. In the midst of the yells and commotion of his comrades, he lost his balance, fell, and was injured. Assume, as contended by the appellant and approved by the trial court, that the boy, of average mental capacity for one of his age, was not exempt from the charge of contributory negligence; still, it cannot be held, as a matter of law, that he acted with less care than an ordinarily reasonable and prudent child of his age would exercise under the same circumstances, surroundings and conditions.

At the close of respondent's case, her attorney moved the court that the complaint be amended in accordance with the testimony of the boy so as to allege that the place was an attractive one to children. The motion was granted over the objection of the appellant. This ruling together with the giving of certain instructions which in part cover this view of the case it is claimed was reversible error. It is not claimed, as we understand, the instructions were wrong if the ruling on the motion to amend the complaint was not erroneous. It

is doubtful if there was any necessity for the amendment, upon a consideration of the whole of the complaint. The name given to the effect such a place had upon the children is not so important as the ultimate facts which were already pleaded. Without question that portion of the testimony that encouraged the motion was the account given by the boy of the place, the circumstances, and of the injury, without any objections to his testimony, which was considerably amplified in this particular upon his cross-examination from which we have taken the history by the questions and answers hereinbefore set out. Upon granting the motion, no surprise was claimed nor continuance asked for by the appellant. The matter was within the discretion of the trial court, which was in no sense abused, while the instructions in relation thereto were proper.

In the instructions, the court clearly and fully defined contributory negligence and its effect, and pointed out that, in considering this defense, the jury should pass upon the question as to whether the boy appreciated the dangers to which he was subjected and that his appreciation would depend upon his intelligence and experience more than upon his age. It is admitted by the appellant that the instructions were good as far as they went, but that they failed to give the jury a standard by which to measure the conduct of the boy after considering his experience and intelligence. Accordingly, it is contended the court should have given in this connection an instruction requested by the appellant to the effect that, if the jury believed the boy did not use such care as a person of his capacity, age, and experience would have ordinarily used under the circumstances surrounding him at that time, and that such lack of care contributed to the injuries complained of, then he was guilty of contributory negligence and the verdict should be for the defendant. Counsel rely

upon the case of *Mitchell v. Tacoma R. & M. Co.,* 9 Wash. 120, 37 Pac. 341, wherein the rule is stated to be that it is necessary for the jury to ascertain if the injured child made such use of its capacity to exercise care as the law required and that the instructions should furnish the rule by which that fact was to be determined.

The rule is a correct one and as a matter of fact was observed in the present case. In another paragraph of the instructions, the jury had been advised,

"A person is guilty of negligence when he fails to exercise ordinary and reasonable care; that is to say, such care as an ordinarily reasonable and prudent person would exercise under the same circumstances, surroundings and conditions."

This was as effective as the one refused as a guide by which to measure the conduct of the boy after considering his experience, age, and intelligence, considered with the definition of contributory negligence and its effect as contained in the other instructions referred to. The order of placing the instructions together, and the particular language to be used in properly expressing the rules, are at the choice of the trial court.

The argument made on the assignment that the trial court erred in denying a motion for a new trial presents the additional contention that the damages awarded are excessive. In addition to what has already been said as to the extent of the injuries, the record shows that the boy still suffers at times and especially at play, and that besides the injury to the bone and ankle joint, the foot is permanently injured also. That there is permanent injury is shown not only by the opinions of the surgeons but by the ascertainment and description by them of conditions that satisfy the layman of such injuries. Located as they are in the foot and at

the end of the bone in the ankle joint, we are satisfied the verdict is not excessive.

Judgment affirmed.

HOLCOMB, MOUNT, MAIN, and TOLMAN, JJ., concur.