[No. 25614. Department One. August 29, 1935.]

J. W. JUNTILA, SR., *et al., Appellants,* v. EVERETT
SCHOOL DISTRICT No. 24, *Respondent.*[1]

*Verne C. Henry* and *William A. Johnson,* for appellants.

*Charles R. Denney,* for respondent.

GERAGHTY, J.—This action was brought by the plaintiffs to recover damages for loss of the services of their son, William Juntila, Jr., eighteen years of age, resulting from injuries sustained in a fall from bleachers maintained by defendant in Bagshaw Field, Everett. At the close of plaintiffs' case, the defendant interposed a motion for nonsuit, on the grounds that the evidence did not establish defendant's primary negligence and that the son was guilty of contributory negligence, as a matter of law. The motion was granted

[1] Reported in 48 P. (2d) 613.

upon both grounds, and judgment entered dismissing the action. The plaintiffs appeal.

Bagshaw Field was owned and maintained by the respondent school district for the conduct of the athletic activities of the schools in the district, as well as for other public exhibitions. Prior to the accident here involved, the field had been let to the American Legion for exhibitions promoted by that organization in connection with its convention in the city of Everett. The field not having sufficient seating capacity, the legion constructed additional bleachers. These bleachers remained on the field after the convention as part of its equipment.

The top seat of the bleachers was two feet wide and protected by guard rails supported by 2x6 timber uprights, eight feet apart and extending from the ground upward to the height of four feet above the seat. A 2x4 timber was nailed flatwise on top of the uprights, and another 2x4, which had been reduced by dressing to the thickness of 1⅝ inches, was nailed to the uprights on the inside, two feet above the seat. The 2x4 pieces were sixteen feet in length, extending across two of the eight-foot spaces between uprights.

On the night of the accident, a football game between the Everett high school team and an out-of-town team was being played in Bagshaw Field. Young Juntila, who had purchased a season ticket entitling him to admission to all games on the field, was present. The attendance was large, and when he entered, the seats were all taken. He, with several boys and girls, took a standing position on the top seat. After standing there for a short time leaning against the railing, he, with five or six others, sat upon the middle rail. The rail gave way under their weight, and Juntila, with some of the others, fell to the ground back of the

bleachers, sustaining the severe injuries for which suit was brought.

We quote in part from his testimony:

"Q. By the time the game started then the whole top back where you were had been filled? A. Yes. Q. What is this top back? What do you mean? A. It's composed of the railings, top and center railings, and there is a space between that and the seats where the students sit. There is sufficient room for a person to stand up and lean against the railing. Q. There was no place to sit down at all? A. No. . . . Q. Just describe to the jury how you did there during the progress of that game. Just stand up and show them against the seat there somewhere. A. The railing was about so high (illustrating), and I leaned against it this way in this manner first; but I gradually got tired of leaning against it this way and I sat down on this middle railing—sat down against it like this, and leaned up against the other one. That's all I remember. Q. Anybody else doing that? A. Yes, almost everyone was. Q. Everyone that was in the back row? A. Yes. . . . Q. Now, did I understand you to say that as soon as you sat down on it it went down? A. No, I had been sitting there a little while. . . . Q. Just describe it again. I want to get that clear, just how you did. This is the railing here you are speaking of, and this is the top of the railing (indicating). This is the bottom seat. If you can show the jury again once more I would like to see that, please. This is the two-by-four railing that you speak of, and this is the top of the railing. They were sitting here, I take it? A. They were sitting right in front of me about this far away and I was leaning against it in this manner at first but I tired of this, and we sort of sat down on this other railing and leaned against the top one, and the bottom one gave way. Q. And this one gave way? A. Yes. Q. Were you the only one sitting there? A. No, I wasn't. Q. . You say they were all doing it along the back? A. Yes. . . . Q. But you did, of course, know when you were up there that that was a guard railing? A. Yes, I did."

Richard Swanson, a student who sat on the railing with Juntila, testified:

"We came in the student's gate and there was people standing all around the bleachers, and no one could find a seat. We walked down the full length of the field and looked for seats, but we couldn't find any so we went up the north side and stood up on the top, and the other people kept coming up, and we kept moving down and making room for them. Q. You kept moving down? A. Yes, sir. Q. Then what happened? A. Well, the game, I guess, started and people were still coming up there and we decided we wouldn't move any further because we had the full advantage of the field, about the fifty yard line, and we thought we'd stay right there. We thought—well, the game had been on for a few minutes so we sat down; it was easier than standing up. . . . Q. Tell the jury just how you sat. A. We stood up there at the beginning like this. Q. Leaning against this railing? A. Yes, sir. And every one was standing like this, and someone sat down, and the rest of us sat down also, and leaned down like this, but I was up against the upright and I was sitting on about two inches of space that was holding me, that was this 2x4 here (indicating on exhibit)."

Other students sitting on the rail when it gave way testified substantially to the same effect.

Appellants' first three assignments of error relate to the court's rulings (a) that respondent was guilty of no primary negligence, and (b) that appellants' son was guilty of contributory negligence.

It is hardly necessary to restate the rule that, upon a motion for nonsuit, all evidence favorable to the contention of the plaintiff must be considered as true, and the trial court must consider all inferences most favorably to the plaintiff and most strongly against the defendant. *Hayden v. Colville Valley National Bank,* 180 Wash. 220, 39 P. (2d) 376, 43 P. (2d) 32.

Young Juntila was at the game in response to

the invitation extended by respondent to the public, and he had a ticket entitling him to admission. The respondent owed him the duty to exercise all proper precaution to maintain the field and bleachers in a reasonably safe condition for the use to which they might rightly be put. 26 R. C. L. 713. But respondent was not an insurer of his safety. It owed him only the degree of care that would be expected of an ordinarily prudent person in its position. 26 R. C. L. 714; *Greene v. Seattle Athletic Club,* 60 Wash. 300, 111 Pac. 157, 32 L. R. A. (N. S.) 713.

Appellants contend that the respondent failed to meet the standard of care resting upon it by law, in that it should have foreseen that many spectators would crowd upon the back seat of the bleachers, subjecting the railing to a pressure it was not constructed to withstand. This contention would have some force if the railing had yielded to lateral pressure against it from within. But the railing failed because it was not sufficiently strong to support the downward pressure of the weight of persons sitting upon it, a use for which it was not intended.

The rail itself did not break. The sixpenny nails with which it was fastened to the uprights were insufficient to sustain the weight placed upon them. The nails were sufficient to hold the railing in place as a guard, but not as a seat. A wooden railing 1⅝ inches thick was clearly not intended as a seat. It is to be borne in mind, too, that the top seat was only two feet wide and, when occupied as it was in this instance, left little room for standing. The condition obviously offered no invitation to spectators to stand upon the back seat.

According the appellants' case the benefit of all proper inferences, we are unable to escape the conclu-

sion that the trial court correctly found respondent free of negligence.

The appellants cite numerous cases to sustain their position. With the general principles of law announced in those cases, we agree. But the cases differ in their facts from the one at bar. *Howard v. Tacoma School Dist. No. 10,* 88 Wash. 167, 152 Pac. 1004, Ann. Cas. 1917D, 792, is a leading case in which we announced the rules governing the liability of school districts for negligence in the maintenance of playgrounds. The immediate issue of fact there had to do with the injuries sustained by a child six years of age, injured in the use of an appliance intended for older children. The act of negligence rendering the district liable was the maintenance, unprotected, of a nuisance attractive to little children.

In *Stovall v. Toppenish School Dist. No. 49,* 110 Wash. 97, 188 Pac. 12, 9 A. L. R. 908, a boy eight years old was injured upon a school playground. A round steel tank was left unguarded on the playfield. The injured boy, with others, was playing with the tank. Certain of the boys would roll it back and forth on the ground while others would either stand or sit upon it, the purpose being, apparently, to see how long those on the tank could remain there without falling off. While the tank was rolling in this manner, the boy either fell or was pushed from the tank by one of the other boys. The tank rolled over his leg, causing severe injuries. The primary negligence of the district was apparently taken for granted, the principal matter considered in the opinion being the question of law whether an action could be maintained at all against the school district, which was decided adversely to its contention. Here, again, we have the suggestion of an attractive nuisance left unguarded upon school grounds.

In *Hutchins v. School Dist. No. 81,* 114 Wash. 548, 195 Pac. 1020, repairs were being made to one of the buildings of the district and a pit was dug in the school grounds. Some small boys were playing around the pit and one of them dared another, nine years old, to jump across it. He attempted to do so and fell into the pit. The school district contended that there was no proof of negligence. The court held otherwise, saying:

"In our view, upon the question of whether the attractiveness of the dangerous place was such as to entice children, and at the same time such as to constantly suggest to the school district and its officers the reasonable probability of just such or a similar accident, there can be no room for an opinion other than that it was one for the jury."

Of the cases cited by appellants from other jurisdictions, the one most favorable to their contention is *Murrell v. Smith,* 152 Mo. App. 95, 133 S. W. 76. In that case, a platform had been erected at a street fair. It stood four feet above the ground and was unguarded. A child eight years of age left its parents and went under the platform. While the child was under it, the platform gave way, and he sustained injuries resulting in death. The force of the crowd, attracted by the performers, crushing against the side of the platform caused its fall. Commenting on the facts, the court said:

" . . . and it could not be said with any semblance of reason that the boy, Oliver, at the time he went under this platform was in an 'out-of-the-way place' wholly disconnected from the street fair; nor can it reasonably be said that is to be compared to the curiosity that would lead one to go into an out-of-the-way place such as a garret to gratify a mere curiosity or to seek the basement of a house for a like purpose. It is apparent upon the slightest examination that the plaintiffs' child, considering his age and surroundings

—a child only eight years of age with those childish instincts characteristic of such a boy—in going under the platform, under the facts disclosed in this record, was only going where a child of his age would naturally have gone and in a place where those in charge of the fair grounds who had erected this platform could well have anticipated children would go and in which, during the day, children were going.''

Space does not permit us to prolong the discussion of other cases cited by appellants.

■ What we have said in our discussion of the question of respondent's primary negligence to some extent disposes of the contention that young Juntila was not guilty of contributory negligence. This case is not one involving the maintenance of an attractive nuisance enticing immature children into harm's way. Juntila was eighteen years of age, of mature judgment and fully able to appreciate the risk he took in sitting, with numerous others, upon the railing. He testified he knew it was not intended as a seat. In taking his seat upon the railing, he assumed the attendant risk.

In *Polk v. Spokane Interstate Fair,* 73 Wash. 610, 132 Pac. 401, this court said:

''It seems to us there can be little, if any controversy as to what the law is, under the facts disclosed. The owner of the premises is liable in damages to those coming to them at his invitation, who, while in the exercise of due care, are injured because of some unsafe or negligent condition; but it is equally true that, when one voluntarily and willingly puts himself or his property in danger, there is a presumption that he assumes all the risks reasonably to be apprehended from such conduct. In cases of this kind, this assumption is called contributory negligence, and is as much a defense in these cases as to any other to which it may be applied.''

Errors assigned by appellants upon the court's exclusion of certain testimony offered by them are im-

material, in view of the conclusion we have reached upon the main issue.

The judgment is affirmed.

BEALS, TOLMAN, and MAIN, JJ., concur.